# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMES BURNS : CIVIL ACTION
:
v. :
:
WAYNE GAVIN, *et al*. : No. 12-2006

## REPORT AND RECOMMENDATION

CAROL SANDRA MOORE WELLS                     January 22, 2013
CHIEF UNITED STATES MAGISTRATE JUDGE

       Presently before the court is a Petition for Writ of Habeas Corpus filed by James Burns ("Petitioner"), *pro se*, pursuant to 28 U.S.C. § 2254. Petitioner is a state prisoner at the State Correctional Institution located in Waymart, Pennsylvania. Petitioner seeks habeas relief based on one claim of insufficient evidence. The Honorable Berle M. Schiller referred this matter to the undersigned for preparation of a Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that Petitioner be denied habeas relief.

## I. FACTUAL AND PROCEDURAL HISTORY[1]

       The Pennsylvania Superior Court summarized the relevant facts leading to Petitioner's arrest as follows:

> On July 22, 2002, Burns and his co-conspirator Edward Johnson ["Johnson"] pulled up their car to where E.P., a seven year old girl, was playing with friends outside of her home in Philadelphia. Johnson got out of the car, grabbed E.P, and dragged her into their car. [Petitioner] drove away from the scene while Johnson bound E.P. with duct tape. They took E.P. to the basement of a vacant home and left her there bound in tape with a dirty

---

1. The facts set forth in this background and procedural history were gleaned from *Commonwealth v. Burns*, No. 1200 EDA 2009, mem. op. at 1-2 (Pa. Super. Ct. Aug. 9, 2010) ("2010 Pa. Super. Ct. Op."), *Commonwealth v. Burns*, No. 3151 EDA 2003, mem. op. at 2-3 (Pa. Super. Ct. June 22, 2006) ("2006 Pa. Super. Ct. Op."), the Petition for Writ of Habeas Corpus ("Pet."), the Response to the Habeas Corpus Petition ("Resp."), Petitioner's Traverse, and all exhibits filed by the parties and the state court record.

mattress, a small amount of food and a bucket for her to use as a toilet.

[Petitioner] and Johnson made a series of calls to E.P.'s grandmother demanding $150,000 and threatening to kill E.P. if the ransom was not paid. Police officers traced these calls to a cell phone owned by [Petitioner's] girlfriend.

On the evening of July 23, 2002, around the same time that police identified the kidnappers based on this lead, E.P. managed to free herself of the duct tape and escape the vacant home by breaking a window and gaining the assistance of some nearby children who heard her screams. She was taken to the hospital and treated for an injury to her left eye caused by having duct tape wrapped around her head. The fact that [Petitioner] and Johnson were being sought was reported on television news, and they moved from one hideout to the next trying to evade capture. After a nearly two-day manhunt, [Petitioner] and Johnson were arrested in the early morning hours of July 25, 2002.

2010 Pa. Super. Ct. Op. at 1-2.

On the morning of July 25, 2002, as Petitioner and Johnson fled approaching police, Petitioner's shorts were torn off as he climbed a fence. Resp. at 8. Attached to those shorts was a key ring, which included a key to the house in which the victim had been held.[2] 2006 Pa. Super. Ct. Op. at 2. Petitioner was spotted at 1211 West Louden Street, during the time the victim was present at the house. 2006 Pa. Super. Ct. Op. at 2. Additionally, both the car used to abduct the victim and the car seen leaving 1211 West Louden Street were associated with Petitioner. Resp. at 4-7.

During initial questioning at the hospital, E.P. did not identify Petitioner in a photo array. Resp. at 6. However, during a subsequent lineup, she indicated that Petitioner was one of the men who had kidnapped her. *Commonwealth v. Burns*, C.P. 0208-0723, slip op. 2 (Phila. Co. July 19, 2005). Additional witnesses identified Petitioner as having been in the vicinity of the house prior

---

2. The address of the house to which the victim was taken and held in captivity was 1211 West Louden Street in the Logan section of Philadelphia. Resp. at 3-4.

to the kidnapping. Resp. at 5. Petitioner was also seen placing a key in the door of the house during the early morning hours immediately following the kidnapping. *Id.* at 6.

On June 13, 2003, a jury convicted Petitioner of kidnapping, criminal conspiracy, interference with the custody of a child, false imprisonment, attempted theft by extortion, and unlawful use of a communications facility. Resp. at 1. He was later given a 14 ½ to 49 year sentence. *Id.* Petitioner filed a direct appeal and the Pennsylvania Superior Court affirmed the trial court's judgment of sentence.[3] 2006 Pa. Super. Ct. Op. at 3. Petitioner was denied *allocatur* in the Pennsylvania Supreme Court. Resp. at 2.

On March 12, 2007, Petitioner, *pro se*, sought collateral relief pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. §§ 9541-46. Resp. at 2. On July 2, 2007, Petitioner filed an amended PCRA petition *pro se*. Resp. at 2. On October 16, 2007, court-appointed counsel filed a "no merit" letter pursuant to *Commonwealth v. Finley*, 644 A.2d 204 (Pa. Super. Ct. 1988). Resp. at 2. The PCRA court dismissed the petition on January 30, 2008; Petitioner did not appeal. Resp. at 3. However, he did file a *nunc pro tunc* appeal from the dismissal of his first PCRA petition. Resp. at 3. The Superior Court dismissed the *nunc pro tunc* appeal on procedural grounds; *allocatur* was denied by the Pennsylvania Supreme Court on June 1, 2011. Resp. at 3.

Finally, on April 16, 2012, Petitioner filed the current petition for Writ of Habeas Corpus claiming that the evidence was inadequate to sustain convictions on any of the offenses for which

---

3. On direct appeal, Petitioner argued that the Commonwealth had presented insufficient evidence to support his convictions on kidnapping, conspiracy, theft by extortion, interference with the custody of a child, and unlawful use of a communication facility. 2006 Super. Ct. Op. at 1-2. Petitioner also alleged trial court error by not allowing co-defendant's guilty plea to be mentioned in his opening statement, in allowing hearsay testimony, and by denying a motion for a mistrial for a defense witness' reference to Petitioner's incarceration. *Id.* at 2. Petitioner also claimed that the trial court's decision not to merge his sentences for kidnapping, false imprisonment, and interference with the custody of a child amounted to an illegal sentence. *Id*.

he was charged. Pet. at 5.[4] Petitioner claims that "the state did not prove their case beyond a reasonable doubt, where three witnesses contradict the key evidence operating the locks of 1211 W. Louden Street, no fingerprints was [sic] matched to Petitioner, Petitioner was not identified by the victim at trial, or immediately after her escape when her mind was the freshes[t]." *Id*. The Commonwealth urges the court to deny the Petition for Writ of Habeas Corpus without a hearing. Resp. at 14. This court recommends that Petitioner be denied habeas relief without a hearing.

## II. DISCUSSION

### A. AEDPA Standard of Review

A claim previously adjudicated by a state court must be considered under the deferential standard of review established by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Accordingly, this court cannot grant habeas corpus relief unless the state court's resolution of the issue:

> (1) resulted in a decision that was contrary to, or involves an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). AEDPA further provides that any findings of fact made by the state court must be presumed to be correct; Petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court's adjudication of a claim is contrary to U.S. Supreme Court precedent if the state court has applied a rule that contradicts the governing law set forth in Supreme Court

---

4. Page references to the within Petition are to the electronic document created by the Clerk of this Court when he scanned the Habeas Petition.

precedent or if the state court confronts a set of facts which are materially indistinguishable from a decision of the Supreme Court and the state court arrives at a different result from the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). The state court should be "given the benefit of the doubt" and the habeas court should not be quick to attribute error. *See Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*). In that regard, it is not necessary that the state court cite the governing Supreme Court precedent or even be aware of the governing Supreme Court precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam*). The only requirement is that "neither the reasoning nor the result of the state-court decision contradicts" U.S. Supreme Court precedent. *Id.*

If the state court correctly identifies the governing U.S. Supreme Court precedent, then unreasonable application analysis applies. *Williams*, 529 U.S. at 406. A state court unreasonably applies Supreme Court precedent when the state court correctly identifies the legal rule, but applies it unreasonably to the facts of the petitioner's case. *Id*. at 407-08. The habeas court must ask whether the state court's application of Supreme Court precedent was objectively unreasonable. *Id*. at 409. The habeas court may not grant relief simply because it disagrees with the state court's adjudication of the claim; rather, the habeas court must be convinced that the state court's adjudication of the claim was objectively unreasonable. *Id.* at 411. In determining whether the state court's adjudication was unreasonable, the habeas court may only consider the factual record before the state court when it ruled on the claim. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1400 (2011). Likewise, only Supreme Court precedent that had been decided by the date of the state court's decision may be used to determine if the state court's adjudication was reasonable. *Greene v. Fisher*, 132 S.Ct. 38, 44 (2011). It is permissible for the habeas court to review lower

federal court decisions applying Supreme Court precedent to determine whether the state court's adjudication was reasonable. *See Fischetti v. Johnson*, 384 F.3d 140, 149 (3d Cir. 2004). This is not to say that lower federal court opinions may be relied upon to overcome § 2254(d)(1)'s bar to habeas relief, because only U.S. Supreme Court authority may be relied upon to meet that standard. *Renico v. Lett*, 130 S.Ct. 1855, 1865-66 (2010).

The Supreme Court has interpreted AEDPA's factual review provision, § 2254(d)(2), to mean that "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding. *Miller-El v. Cockerell*, 537 U.S. 322, 340 (2003). A clear example of an unreasonable factual determination occurs where the state court erroneously finds a fact that lacks any support in the record whatsoever. *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). In that extreme circumstance, the presumption of correctness under § 2254(e)(1) is also clearly and convincingly rebutted. *Id.* Habeas relief is, thus, permitted where the state court's factual determination is unreasonable in light of the evidence presented in the state court proceeding. *Lambert v. Blackwell*, 387 F.3d 210, 235 (3d Cir. 2004).

In this case, the court must first look to see whether the Pennsylvania Superior Court applied the correct standard when reviewing Petitioner's claim. 28 U.S.C. § 2254(d)(1). Although the Superior Court did not expressly cite to *Jackson v. Virginia*, the governing U.S. Supreme Court precedent, the governing sufficiency standard in Pennsylvana is equivalent to *Jackson*. *See Evans v. Court of Common Pleas, Delaware Cty.*, 959 F2d 1227, 1232, n.6 (3d Cir. 1992). Hence, the Superior Court's resolution of Petitioner's sufficiency claim was not contrary to *Jackson*. The *Jackson* standard requires the reviewing court to determine whether any rational

trier of fact could find the defendant guilty based on the evidence presented at trial. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). Here, the Superior Court recited the evidence it believed to be sufficient to sustain the convictions and, upon examination by this court, that evidence was sufficient to satisfy the requisite elements of each offense charged. *See infra*, § II.B. Thus, while a more thorough explanation of the relationship of the evidence to the crimes charged may have been preferable, the Superior Court's decision to sustain Petitioner's convictions was not "objectively unreasonable."

B. **Claim of Insufficient Evidence**

Petitioner's claim of insufficient evidence is governed by *Jackson v. Virginia*, which states:

> The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction . . . does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt' . . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review, *all of the evidence* is to be considered in the light most favorable to the prosecution.

443 U.S. 307, 318-19 (1979) (citations omitted) (emphasis in original). The habeas court is to presume that conflicting inferences of historical fact were resolved in favor of the prosecution. *Id.* at 326. Finally, when applying the sufficiency of the evidence test, the habeas court must consider the types of evidence the state courts consider relevant to proving the elements of the offense at issue. *Id*. at 324. This review is essential inasmuch as the elements of the criminal offense are defined by state law. *Id*. at 324, n.16.

7

After reviewing and considering the elements required under Pennsylvania law to convict Petitioner of his charged crimes, this court finds that the evidence presented was adequate to sustain Petitioner's convictions. First and foremost, the evidence properly supports a guilty verdict for criminal conspiracy, allowing Petitioner to be found vicariously liable for the criminal actions of co-defendant Johnson. *See* N.T. June 12, 2003 at 157 (Instructing the jury that "[c]onspirators are like partners. They can be responsible for each other's words and acts"). Second, even without the conspiracy charge, ample evidence supports Petitioner's guilty verdict on the kidnapping, interference with the custody of a child, and false imprisonment charges.

To prove the existence of a conspiracy, the Commonwealth must establish that the defendant "(1) entered an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and, (3) an overt act was done in furtherance of the conspiracy." *Commonwealth v. Rios*, 684 A.2d 1025, 1030 (Pa. 1996); 18 Pa.C.S. § 903 (1978).[5] The overt act may be "proved to have been done by [the defendant] *or by a person with whom he conspired*." 18 Pa.C.S.A. § 903(e) (emphasis added). Thus, a person may be convicted for all of the criminal actions taken in furtherance of the conspiracy, whether those actions were performed by him or not. *See Commonwealth v. Plusquellic*, 449 A.2d 47, 50 (Pa. Super. Ct. 1982) ("The agreement is the nexus which renders a conspirator vicariously liable for the acts of his associates"). This is not to say that "[m]ere association, presence at the scene, or knowledge of the crime" is sufficient to find involvement in a conspiracy; rather, the Commonwealth must

---

5. All citations to statutes are made to the statute in force at the time of Petitioner's offense, notwithstanding subsequent modifications.

prove beyond a reasonable doubt that the defendant "became an active participant in the criminal enterprise and that he had knowledge of the conspiratorial agreement." *Commonwealth v. Hennigan,* 753 A.2d 245, 253 (Pa. Super. Ct. 2000) (quoting *Commonwealth v. Swerdlow*, 636 A.2d 1173, 1177 (Pa. Super. Ct. 1994)). Furthermore, a defendant may be convicted of both the completed crime and the conspiracy to commit that crime. *Rios*, 684 A.2d at 1030.

In Pennsylvania, associations between alleged co-conspirators, knowledge of the crime, presence at the scene of the commission of the crime, and participation in the crime which is the object of the conspiracy are relevant factors in determining a conspiracy, although none are conclusive individually. *Commonwealth v. Lamb*, 455 A.2d 678, 685 (Pa. Super. Ct. 1983). These factors, when combined, may create a "web of evidence" which links the alleged conspirators together. *Id.* at 685-86.

The following evidence presented at Petitioner's trial was sufficient to prove conspiracy. Petitioner was present at the scene of the abduction and actually drove his co-conspirator, Johnson, to the crime scene where the victim was forced into the car. N.T. June 4, 2003 at 48-53. Next, Petitioner drove the car to 1211 West Louden Street where the victim was held, was later seen at that location with Johnson and was apprehended with a key to that house in his pants. N.T. June 6, 2003 at 128-52; N.T. June 11, 2003 at 6-12, 25-28. Furthermore, Petitioner spent several days with Johnson eluding authorities. N.T. June 4, 2003 at 167-74.

The fact that evidence was presented showing that Petitioner drove Johnson to and from the scene and eluded the police with Johnson alone would be sufficient, under

9

Pennsylvania law, for a jury to infer the existence of a conspiracy between Petitioner and Johnson. *Commonwealth v. Davalos*, 779 A.2d 1190, 1194 (Pa. Super. Ct. 2001) (sustaining conviction for conspiracy where the defendant drove the shooter to a bar, circled the block several times, then drove the shooter away and evaded police). The facts that Petitioner was later seen at 1211 West Louden Street with Johnson and was arrested with a key to that house further link Petitioner to a "web of evidence" from which a jury could find a conspiracy. N.T. June 11, 2003 at 12, 45.

In Pennsylvania, a jury is permitted to use the fact of concealment as substantive evidence of guilt, at least when that concealment occurs with full knowledge that the defendant is wanted for the commission of a crime. *Rios*, 684 A.2d at 1035. The jury may also look at the circumstances of the defendant's flight to infer that the defendant had the requisite knowledge. *Id*. Both Petitioner and Johnson knew they were wanted as suspects in the kidnapping, because the kidnapping had generated media attention, but together sought to evade capture throughout the two days following the kidnapping N.T. June 4, 2003 at 70, 105-14, 130-35; N.T. June 10, 2003 at 147-58, 163-83; hence, the jury properly could find that they were hiding to evade capture.

In addition to the fact that Petitioner may be found vicariously criminally liable for all the crimes committed in furtherance of the conspiracy to kidnap the victim, the evidence herein is sufficient to directly sustain his kidnapping conviction. In Pennsylvania, "a person is guilty of kidnapping another if he unlawfully removes another a substantial distance under the circumstances from the place where he is found, or if he unlawfully confines another for a substantial period in a place of isolation, with any of the following

intentions: (1) To hold for ransom or reward . . . (2) To facilitate commission of any felony or flight thereafter . . ." 18 Pa. C.S.A. § 2901(a) (1992). It is important to note that the confinement of the victim must be for the purpose of committing another crime. *Commonwealth v. Eckrote*, 12 A.3d 383, 388 (Pa. Super. Ct. 2010). Force, threat, or deception is *not* required in Pennsylvania if the victim is under the age of fourteen. 18 Pa.C.S.A. § 2901(b). The elements necessary for a kidnapping conviction may be proven circumstantially. *Commonwealth v. Miller*, 664 A.2d 1310, 1317 (Pa. Super. Ct. 1995).

To show that the victim was confined for a "substantial period in a place of isolation," there must be evidence to establish that the victim of a kidnapping was "separated from the normal protections of society in a manner which made discovery or rescue unlikely.'" *Commonwealth v. Housman*, 986 A.2d 822, 832 (Pa. 2009) (quoting *Commonwealth v. Markman*, 916 A.2d 822, 832 (Pa. 2007) (citing Model Penal Code § 212.1, cmt. 3)). The court in *Housman* determined that evidence showing that the victim was bound and gagged by the kidnappers was sufficient for the jury to find the victim had been confined for a substantial period of time in a place of isolation. *Housman*, 986 A.2d at 832.

In Petitioner's case, the Commonwealth provided evidence that the victim was taken from the area in front of her house, bound with duct-tape, driven across town by Petitioner, and placed in a dark basement with the front door locked. N.T. June 4, 2003 at 48-53; June 5, 2003 at 25-28, 30-33, 37-38; June 6, 2003 at 17-19. Ransom calls were made from a phone traced to Petitioner's girlfriend. N.T. June 4, 2003 at 58-63, 175-77; June 6, 2003 at 88-100, 109-25; June 9, 2003 at 108-11; June 10, 2003 at 70-79. This

11

evidence provides the jury with substantial evidence to reasonably determine that Petitioner was guilty of kidnapping, even if Petitioner was not identified as the person who grabbed the victim or bound her. Evidence that Petitioner transported the victim to a location where she was substantially confined for the purpose of ransom is enough to allow the jury to convict Petitioner of kidnapping.

Likewise, the evidence is sufficient to support Petitioner's conviction for interference with the custody of a child. Pennsylvania law provides that "[a] person commits an offense if he knowingly or recklessly takes or entices any child under the age of 18 years from the custody of its parent, guardian or other lawful custodian, when he has no privilege to do so." 18 Pa.C.S.A. § 2904(a) (1984). If the defendant is not the parent or legal guardian of the child and acts "with knowledge that his conduct would cause serious alarm for the safety of the child, or in reckless disregard of a likelihood of causing such alarm," the offense is a second degree felony. 18 Pa.C.S. § 2904(c).

Driving the minor child away from her house, regardless of whether Petitioner placed the victim in the vehicle or not, sufficiently supports his conviction. Petitioner knew that neither he nor Johnson was the custodial guardian of the minor victim when he removed the child from the custody of her grandmother by driving her away from the house. Resp. at 3. Therefore, his acts satisfy the required elements for a conviction for interference with the custody of a child.

Similarly, the evidence is sufficient to sustain Petitioner's conviction for false imprisonment. "[A] person commits a misdemeanor of the second degree if he knowingly restrains another unlawfully so as to interfere substantially with his liberty." Pa. C.S.A. §

12

2903 (1973). According to the jury instructions given at the conclusion of Petitioner's trial, "[a] defendant restrains an alleged victim if he deprives her of her freedom to leave a particular place." N.T. June 12, 2003 at 148. Petitioner was not required to physically place the victim into the car to be found guilty of false imprisonment, but merely had to deprive the victim of the freedom to leave. By driving away from the victim's house while the victim was bound and blindfolded in the back, Petitioner effectively prevented the victim from leaving.

Petitioner's convictions for attempted theft by extortion and unlawful use of a communications facility may be upheld under his vicarious liability for the acts of his co-conspirator Johnson. *See Plusquellic*, 449 A.2d at 50. Co-conspirator Johnson's actions satisfied the elements necessary to sustain a conviction for both crimes, therefore Petitioner may be held criminally liable, as well.

A person commits criminal attempt "when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S. § 901(a) (1973). A person is guilty of theft by extortion if he "(1) intentionally obtains or withholds property of another by threatening to: (1) commit another criminal offense . . . or (7) inflict any other harm which would not benefit the actor." 18 Pa.C.S.A. § 3923 (1976). Therefore, to be convicted of attempted theft by extortion, a defendant must have taken a "substantial step" towards threatening another person with the goal of extracting someone else's property.

Johnson, Petitioner's co-conspirator, made several ransom calls explaining to the victim's grandmother that, if Petitioner and Johnson were not given $150,000, they would

13

kill the victim. N.T. June 4, 2003 at 58-60. The evidence clearly supports the jury's determination that Johnson, one of the kidnappers, committed the crime of attempted theft by extortion. As a member of the conspiracy, Petitioner may also be found guilty.

Likewise, the evidence supports a conviction for unlawful use of a communications facility. The jury instructions at the conclusion of Petitioner's trial stated that the defendant, or an accomplice, must have been proven to have (1) used a communications facility in the commission of a crime and (2) the crime must have been one in which the defendant was charged. N.T. June 12, 2003 at 159. A cell phone is considered a communications facility. *Id*. at 160. Here, the jury was presented with evidence that Johnson made several ransom calls on a cell phone (notably, owned by Petitioner's girlfriend) during the kidnapping. N.T. June 4, 2003 at 177, 200-04. Again, since the evidence against Petitioner's co-conspirator clearly satisfied the elements of the crime, Petitioner may also be convicted as a member of the conspiracy.

In conclusion, although the Pennsylvania Superior Court did not explicitly perform the detailed analysis provided above in its opinion, its conclusion that the facts supported Petitioner's conviction was not objectively unreasonable, considering the facts of record. Likewise, the Superior Court concluded, after looking at all the evidence, that the facts were sufficient to sustain convictions for criminal conspiracy, kidnapping, interference with the custody of a minor, false imprisonment, attempted theft by extortion, and unlawful use of a communications facility. 2006 Super. Ct. Op. at 1-3. While it is true that Petitioner's actions alone did not meet the requirements of all of the crimes charged, Pennsylvania law is clear that where a conspiracy is proved, co-conspirators are held liable

for the acts of any member of the conspiracy that are committed during the life of the conspiracy. *Plusquellic*, 449 A.2d at 50. Because the evidence clearly supports the elements of all of the crimes charged and those crimes were committed by either Petitioner or Johnson during the course of the conspiracy to kidnap the victim and hold her for ransom, the evidence presented was sufficient to sustain all of Petitioner's conviction.

### III. CONCLUSION

The state courts properly applied the correct standard of review provided by *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). Under AEDPA, a court analyzing a Petition for Writ of Habeas Corpus may only grant relief if (1) the state court improperly or unreasonably applied federal law or U.S. Supreme Court precedent or (2) the state court's decision relied on an unreasonable determination of the facts. Here, the Pennsylvania courts did not unreasonably or incorrectly apply federal law or precedent, nor did they rely on an unreasonable interpretation of the facts in the record.

Petitioner's sufficiency of the evidence claim lacks merit under the AEDPA standard. Reasonable jurists would not debate the appropriateness of this court's substantive disposition of his claim; therefore, a certificate of appealability should not issue. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Accordingly, I make the following:

**RECOMMENDATION**

**AND NOW**, this 22nd day of January, 2013, for the reasons contained in the preceding Report, it is hereby **RECOMMENDED** that Habeas Petition be **DENIED** without an evidentiary hearing. Petitioner has neither demonstrated that any reasonable jurist could find this court's procedural ruling debatable, nor shown denial of any Constitutional right; hence, there is no probable cause to issue a certificate of appealability.

Petitioner may file objections to this Report and Recommendation within fourteen (14) days of being served with a copy of it. *See* Local R. Civ. P. 72.1(IV). Failure to file timely objections may constitute a waiver of any appellate rights.

It be so **ORDERED**.

 */s/ Carol Sandra Moore Wells*
 CAROL SANDRA MOORE WELLS
 Chief United States Magistrate Judge